The committee on Elections, to whom was referred the petition of Charles H. Shepard alleging that there was no legal election of representative from the twenty-second Essex district at the election held Nov. 6, 1889, and praying that the votes cast for representative in said district may be examined and legally counted by the House, having considered the same, submit the following report : —
*31 The committee gave extended hearings to the interested parties, the petitioner appearing in his own behalf and the sitting member by counsel.
The twenty-second Essex district is composed of the towns of Danvers and Middleton and is entitled to one representative.
By the original count of the election officers the petitioner appeared to be elected by a plurality of two votes; but by a recount duly made by the selectmen of said towns, at which both candidates were represented, the sitting member appeared to be elected by a plurality of three votes, the vote standing: —
Tor Robert K. Sears,.538
Tor Charles H. Shepard, ..... 535
The difference between the two counts was due to the discovery at the recount of certain additional votes for Mr. Sears as to which no question is now made.
The petitioner alleged, as grounds for a recount by the House, that eleven votes cast and counted in the town of Danvers “ were marked irregularly, and were therefore defective under the present law; that of said eleven votes four were for the petitioner and seven for said Robert K. Sears, and that the rejection of said ‘ defective ’ votes would leave the result a tie.”
The petition contained allegations of other irregularities attending the election, but no evidence was offered upon them, and at the final hearing the petitioner waived consideration of them by the committee, resting his case upon the alleged invalidity of the eleven votes aforesaid.
The petitioner did not contend that the seven ballots thus cast for the sitting member bore upon their face any evidence of corrupt prearrangement by which the secrecy of the ballot might be violated, nor that extrinsic evidence of such prearrangement could be offered.
The counsel for the sitting member contended that section 1 of chapter 262 of the Acts of 1886 (which provides for a recount of ballots cast in towns), by giving the selectmen authority to examine the ballots and “ determine the question raised,” has constituted the selectmen a judicial tribunal, whose decision was not reviewable by this House except in the exercise of its arbitrary authority.
In view of the opinion that the committee have taken of the ultimate facts of the present case, a determination of this question was not essential to a decision of this contest; but, as the question is logically preliminary to any consideration of the ballots referred to, it seems proper that it should be passed upon.
*32 And the committee are of opinion that the construction contended for should not be adopted by this House; that the true intent of the statute was to provide an opportunity for a review of the original count under circumstances calculated to secure greater accuracy than is possible upon election day ; and in such a manner that candidates might ascertain the exact condition of the vote. At this review the selectmen undoubtedly have authority to pass upon the questions raised, but to hold that their decision should be final upon such questions as are likely to be raised under our present Ballot Act would give to selectmen an authority the unrestricted exercise of which by partisan boards might lead to the most serious results.
Most of the “questions raised” under the Ballot Act of 1888 are questions of law, to wit, the construction of that act, whether it is mandatory or directory; and it seems eminently proper that the Iíouse, as the judge of the election of its members, should take upon itself the final decision of such questions.
The committee believe that by the adoption of this policy the House will not depart from long-established precedents to the effect that when a petitioner has shown “ substantial and strong reasons for believing there was fraud or error in the recount (by the selectmen) which would change the result,” he is then entitled to a further verification of the returns by the Legislature. If the “ error” which he shows is the improper rejection or admission of ballots by the selectmen, by reason of their mistaken construction of the law, he has brought his case fairly within the above rule. See minority report (accepted by the House) in Bowker v. Bond, Loring & Russell’s Election Cases, 325.
Upon coming to the consideration of the validity of the eleven votes cast in Danvers, the committee proceeded upon an agreed statement by the parties as to the manner in which the ballots were marked. The voter had in each case marked a perfect cross to the right of the name of the candidate and in a line with it, but before the political designation. Moreover, in each case where this irregularity appeared, the voter had marked for candidates for other offices in the same manner throughout the. whole ballot. It was further agreed that if these ballots were rejected the result was a tie, but that if they were counted the sitting member was elected by a plurality of three.
The petitioner contended that the Ballot Act of 1888 and the amendments thereto are mandatory throughout, and that in said eleven ballots, inasmuch as the cross marks were not in the designated square, the voter had failed to comply with the statute requirements and with the card of instructions issued in accord- *33 anee with the law by the secretary of the Commonwealth, and that the ballots should be rejected.
The statutory provisions bearing upon the form and marking of ballots, so far as they are material in this case, are as follows : —
Sect. 10. The ballots shall be so printed as to give to each voter a clear opportunity to designate by a cross mark ( X ) in a sufficient margin at the right of the name of each candidate, his choice of candidates. . . .
Sect. 23. On receipt of Ms ballot the voter shall forthwith, and without leaving the enclosed space, retire alone to one of the voting shelves or compartments so provided, and shall prepare his ballot by marking in the appropriate margin or place, or cross (X) opposite the name of the candidate of his choice for each office to be filled. . ; .
Sect. 26. If the voter marks more names than there are persons to be elected to an office, or if for any reason it is impossible to determine the voter’s choice for any office to be filled, his ballot shall not be counted. . . . (Chap. 413, Acts of 1889.*)
The card of instructions to voters issued by the secretary of the Commonwealth contained the direction, “ Make a cross (X) in the square at the'right of the name of each person for whom you wish to vote.” And the official ballot prepared by the secretary of the Commonwealth and used at said election contained a square on the right-hand edge of the paper in a line with the name of each candidate and immediately after his political designation.
It has been the tendency of all courts and legislative bodies to construe election statutes with the utmost liberality in favor of the ascertainment of the expressed will of the voter, and whenever the statutes do not most explicitly declare that particular infor-malities shall avoid the ballot their provisions are considered directory.
This tendency to the liberal construction of election statutes must have been familiar to the Legislatures that passed the Ballot Acts of 1888 and 1889 ; and, had they intended to make a hard and fast rule to govern the voter in the minutest details of voting, they could have found apt language in which to express such intention. There is but little language in the acts that can, according to the familiar rules of construction, be held to be mandatory. The strongest is to be found in section 26, but the same section contains a clause which seems to negative any construction which should hold the acts to be mandatory in their details : —
If for any reason it is impossible to determine the voter’s choice for any office to be filled, his ballot shall not be counted.
*34 It would seem that the necessary implication from this would be that, if it were possible to determine the voter’s choice, his ballot should be counted though it might be informal.
Nor do a majority of the committee find anything in the general spirit and purposes of the acts from which they might be inferred to have a mandatory character. They were intended to give protection and independence to the voter, not to restrain him; to provide him with an official ballot and allow him to deposit it in secrecy, not to fetter him with details.
It will be observed that the Ballot Acts of 1888 and 1889 make no allusion to a “ square at the right of the name.” This expression appears only in the “card of instructions.” The acts say “ by marking in the appropriate margin or place a cross (X) opposite the name of the candidate.” If the claim of the petitioner were to be adopted, the card of instructions would practically be incorporated in the acts and the whole then treated as mandatory, a result which it is difficult to believe was contemplated by the framers of these statutes. Indeed, it might fairly be said that the ballots in question in this case are marked in more technical accordance with the statute, more immediately opposite the candidate’s name, than ballots would be which were marked in the square designated upon the official ballot at the right of the candidate’s political designation.
Although the Ballot Acts in force in Great Britain and her dependencies are not identical in form and language with our own, they are identical in purpose and spirit, and the cases that have arisen under them are valuable as precedents here. In the leading English case of Woodward v. Sarsons, L. R. 10, C. P. 733, the rule is stated to be that “ the paper must be marked so as to show that the voter intended to vote for some one, and so as to show for which of the candidates he intended to vote. It must not be marked so as to show that he intended to vote for more candidates than he is entitled to vote for, nor so as to leave it uncertain whether he intended to vote at all, or for which candidate he intended to vote, nor so as to make it possible, by seeing the paper itself, or by reference to other available facts, to identify the way in which he has voted. If these requirements are substantially fulfilled, then there is no enactment and no rule of law by which a ballot paper can be treated as void though the other directions in the statute are not strictly obeyed.”
The above rule seems to be in perfect accord with any reasonable interpretation of our own Ballot Act, and the .committee are aware of no case in which ballots marked with crosses at the right of candidates’ names, but not within the spaces marked off for *35 them, have been held invalid. Their validity is expressly affirmed in Shield v. Ennis, 8 Irish C. L. 240; Cameron v. McLennan, Hodg. Election Cases, 671; Robertson v. Adamson, 3 Ct. of Sess. (4th Series), 978.
[The report of the committee was accepted.]
A majority of the committee are therefore of opinion that the eleven ballots in question in this case are not to be rejected for any technical non-compliance with the statute requirements, but that, if the intent of the voters can be clearly ascertained from them, they should, in accordance with familiar precedents, be counted as cast.
As to the intent of the voters in casting these ballots the committee believe that no reasonable doubt can be entertained. A voter who goes to the polls, receives the official ballot, enters the compartment, marks his ballot with a cross consistently throughout and then deposits it in the ballot-box, must be presumed to have performed these acts for the purpose of expressing his choice of candidates; and in the present case the expression of that choice seems clear.
A majority of the committee consequently are of opinion that these eleven ballots were properly counted by the selectmen, and that the sitting member was duly elected as shown by the returns.
They therefore recommend that the petitioner have leave to withdraw.
Messrs. Cook and Perkins of the committee do not concur in the report.

 Now sects. 130,162 of chap. 417 of the Acts of 1893.